IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE

```
B.E. TECHNOLOGY, LLC,          )
                               )
        Plaintiff,             )
                               )
v.                             )      No.: 2:12-cv-02783-JPM-cgc
                               )
TWITTER, INC.,                 )
                               )
        Defendant.             )
```

## ORDER DENYING MOTION TO TRANSFER VENUE

Before the Court is Defendant Twitter, Inc.'s ("Defendant or "Twitter") Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404(a) and for Expedited Consideration, filed January 28, 2013. (ECF No. 30.) For the reasons that follow, the Motion is DENIED.

## I. BACKGROUND

This case concerns Defendant Twitter's alleged infringement of United States Patent No. 6,628,314 (the "'314 patent"). (ECF No. 1.) Plaintiff B.E. Technology, LLC ("Plaintiff or "B.E."), is the assignee of the '314 patent (ECF No. 33 at 2), currently owning "all right, title, and interest in the '314 patent, and has owned all right, title, and interest throughout the period" of the alleged infringement (ECF No. 1 ¶ 10).

B.E. alleges that Twitter infringed the '314 patent "by using a method of providing demographically targeted advertising

that directly infringe at least Claim 11 of the '314 patent either literally or under the doctrine of equivalents." (Id. ¶ 11.)

B.E. filed a Complaint in this Court on September 10, 2012. (ECF No. 1.) Twitter filed its Answer and Counterclaim on December 31, 2012. (ECF No. 19.) Twitter thereafter filed its Motion to Transfer Venue on January 28, 2013. (ECF No. 30.) B.E. filed its Memorandum in Opposition to Defendant's Motion to Transfer Venue on February 14, 2013. (ECF No. 33.) With leave of Court, Twitter filed a Reply Memorandum in Support of Its Motion to Transfer on March 4, 2013. (ECF No. 36.) On February 11, 2013, Twitter filed a Motion to Stay pending resolution of its Motion to Transfer Venue. (ECF No. 31.) The Court granted Twitter's Motion to Stay on February 11, 2013. (ECF No. 32.)

Twitter is a Delaware corporation with its principal place of business in San Francisco, California, located in the Northern District of California. (See Axelsen Decl., ECF No. 30-3, ¶ 4; ECF No. 30-1 at 1.) To support its Motion, Twitter contends that all its relevant employees and its "relevant technical documents and evidence" are located in the transferee district. (ECF No. 30-1 at 1.) Further, Twitter asserts that numerous third-party witnesses on whom it intends to rely are also located in or around the Northern District of California. (Id. at 5.)

2

B.E. opposes Twitter's Motion to Transfer.  B.E. is a limited-liability company incorporated in Delaware.  (ECF No. 1 ¶ 2.)  B.E. was originally registered in Michigan, but formally registered to conduct business in Tennessee in September 2012.  (ECF No. 33 at 2.)  B.E. contends that Memphis, Tennessee, is its principal place of business.  (ECF No. 1 ¶ 2.)  Martin David Hoyle ("Hoyle"), B.E.'s founder and CEO, is the named-inventor of the '314 patent.  (ECF No. 33 at 1, 2.)  Hoyle has been a resident of Tennessee since April, 2006.  (Id. at 1, 2.)

B.E. argues that transfer is inappropriate because it has substantial connections with this district.  B.E. argues that Hoyle has been "present in this District since 2006," and B.E. "since at least 2008," and this district is B.E.'s principal place of business.  (Id. at 5.)  B.E. also argues that none of its witnesses are located in the Northern District of California.  (Id. at 8.)  Further, B.E. argues that its corporate documents, including documents relating to the "conception and reduction to practice" of the patent-in-suit, are located in this District.  (Id. at 6.)

## II. STANDARD

Twitter moves the Court to transfer this case to the Northern District of California pursuant to 28 U.S.C. § 1404(a).  (ECF No. 30.)  The statute provides that "[f]or the convenience of the parties and witnesses, in the interest of justice, a

3

district court may transfer any civil action to any other
district or division where it might have been brought." 28
U.S.C. § 1404(a). "As the permissive language of the transfer
statute suggests, district courts have 'broad discretion' to
determine when party 'convenience' or 'the interest of justice'
make a transfer appropriate." Reese v. CNH Am. LLC, 574 F.3d
315, 320 (6th Cir. 2009).

In determining whether to transfer a case under § 1404(a),
the court must first determine whether the claim could have been
brought in the transferee district. 28 U.S.C. § 1404(a)
(allowing transfer to any other district in which the claim
"might have been brought"). Once the court has made this
threshold determination, the court must then determine whether
party and witness "convenience" and "the interest of justice"
favor transfer to the proposed transferee district. Reese, 574
F.3d at 320; Esperson v. Trugreen Ltd., No. 2:10-cv-02130-STA-
cgc, 2010 WL 4362794, at *5 (W.D. Tenn. Oct. 5, 2010), adopted
2010 WL 4337823 (W.D. Tenn. Oct. 27, 2010). In weighing these
statutory factors, the court may still consider the private- and
public-interest factors set forth in the pre-Section 1404(a)
case, Gulf Oil v. Gilbert, 330 U.S. 501, 508-09 (1947), but
courts are not burdened with "preconceived limitations derived
from the forum non conveniens doctrine." Norwood v.
Kirkpatrick, 349 U.S. 29, 31 (1955) (quoting All States Freight

4

v. Modarelli, 196 F.2d 1010, 1011 (3d Cir. 1952)) (internal quotation marks omitted); Esperson, 2010 WL 4362794, at *5.  The United States Court of Appeals for the Sixth Circuit has stated that when deciding "a motion to transfer under § 1404(a), a district court should consider the private interests of the parties, including their convenience and the convenience of potential witnesses, as well as other public-interest concerns, such as systemic integrity and fairness, which come under the rubric of 'interests of justice.'"  Moore v. Rohm & Haas Co., 446 F.3d 643, 647 n.1 (6th Cir. 2006).

Additionally, the "interest of justice" factor has been interpreted broadly by courts, influenced by the individualized circumstances of each case.  The United States Court of Appeals for the Federal Circuit has set forth a non-exhaustive list of pertinent public-interest factors:

> The public interest factors include (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflicts of laws or in the application of foreign law.

In re Acer Am. Corp., 626 F.3d 1252, 1254 (Fed. Cir. 2010); see also In re Nintendo Co., Ltd., 589 F.3d 1194, 1198 (Fed. Cir. 2009) (finding the local-interest factor weighed heavily in favor of transfer); Cincinnati Ins. Co. v. O'Leary Paint Co., 676 F. Supp. 2d 623, 633 (W.D. Mich. 2009) (considering

additional factors such as the relative docket congestion of the transferor and transferee districts).

Initially, B.E. argues that there is a strong presumption in favor of its choice of forum, and that its choice of forum should not be disturbed unless the defendant carries its burden to demonstrate that the balance of convenience strongly favors transfer.  (ECF No. 33 at 3-7.)  B.E.'s argument is erroneously derived from the more stringent forum-non-conveniens standard. Compare Hunter Fan Co. v. Minka Lighting, Inc., No. 06-2108 Ml/P, 2006 WL 1627746 (W.D. Tenn. June 12, 2006) (applying the appropriate private- and public-interest factors but relying on the forum-non-conveniens doctrine to accord strong deference to the plaintiff's choice of forum), with OneStockDuq Holdings, LLC v. Becton, Dickinson, & Co., No. 2:12-cv-03037-JPM-tmp, 2013 WL 1136726, at *3 (W.D. Tenn. Mar. 18, 2013), and Roberts Metals, Inc. v. Florida Props. Mktg. Grp., Inc., 138 F.R.D. 89, 92-93 (N.D. Ohio 1991) (recognizing defendants need to make a lesser showing to overcome plaintiff's choice of forum under § 1404(a)), aff'd per curiam, 22 F.3d 1104 (6th Cir. 1994). Although there is a strong presumption in favor of the plaintiff's choice of forum under the doctrine of forum non conveniens, under § 1404(a), a plaintiff's choice of forum may be considered, but is entitled to less deference.  Discussing the difference between the common-law doctrine of forum non

6

conveniens and the federal transfer-of-venue statute in Norwood,

the Supreme Court stated,

> When Congress adopted § 1404(a), it intended to
> do more than just codify the existing law on forum non
> conveniens. . . . [W]e believe that Congress, by the
> term "for the convenience of parties and witnesses, in
> the interest of justice," intended to permit courts to
> grant transfers upon a lesser showing of
> inconvenience. This is not to say that the relevant
> factors have changed or that the plaintiff's choice of
> forum is not to be considered, but only that the
> discretion to be exercised is broader.

Norwood, 349 U.S. at 32; see also Lemon v. Druffel, 253 F.2d

680, 685 (6th Cir. 1958) ("The choice of the forum by the

petitioner is no longer as dominant a factor as it was prior to

the ruling in Norwood v. Kirkpatrick[.]"); Esperson, 2010 WL

4362794, at *5-6.

Defendant's burden under § 1404(a) is to demonstrate that a

change of venue to the transferee district is warranted. See

Eaton v. Meathe, No. 1:11-cv-178, 2011 WL 1898238, at *2 (W.D.

Mich. May 18, 2011); Amphion, Inc. v. Buckeye Elec. Co., 285 F.

Supp. 2d 943, 946 (E.D. Mich. 2003); Roberts Metals, Inc., 138

F.R.D. at 93. "Merely shifting the inconvenience from one party

to another does not meet Defendant's burden." McFadgon v. Fresh

Mkt., Inc., No. 05-2151-D/V, 2005 WL 3879037, at *2 (W.D. Tenn.

Oct. 21, 2005). "[T]he movant must show that the forum to which

he desires to transfer the litigation is the more convenient one

vis a vis the Plaintiff's initial choice." Roberts Metals,

Inc., 138 F.R.D. at 93 (quoting Mead Corp. v. Oscar J. Boldt
Constr. Co., 508 F. Supp. 193, 198 (S.D. Ohio 1981)) (internal
quotation marks omitted).  If the court determines that the
"balance between the plaintiff's choice of forum and defendant's
desired forum is even, the plaintiff's choice of [forum] should
prevail."  Stewart v. Am. Eagle Airlines, Inc., No. 3:10-00494,
2010 WL 4537039, at *2 (M.D. Tenn. Nov. 3, 2010).

**III. ANALYSIS**

Twitter asserts that B.E. could have brought this action in
the Northern District of California.  (See ECF No. 30-1 at 7.)
B.E. does not dispute this assertion.  (See ECF No. 33 at 4.)
The Court agrees that B.E. could have brought suit in the
Northern District of California.  Therefore, the only issue
remaining is whether the balance of the statutory factors — the
convenience to the witnesses, the convenience to the parties,
and the interest of justice — favors transfer to the Northern
District of California.  The Court will address each statutory
factor separately and balance these factors to determine whether
transfer to the Northern District of California is proper
pursuant to § 1404(a).

**A.   Convenience of the Witnesses**

When asserting that a transferee district is more
convenient for witnesses, a party "must produce evidence
regarding the precise details of the inconvenience" of the forum

8

chosen by the plaintiff.  Esperson, 2010 WL 4362794, at *8.  To satisfy its burden, the movant must do "more than simply assert[] that another forum would be more appropriate for the witnesses; he must show that the witnesses will not attend or will be severely inconvenienced if the case proceeds in the forum district."  Id. (quoting Roberts Metals, Inc., 138 F.R.D. at 93).  Further, "[t]o sustain a finding on [this factor] . . . the party asserting witness inconvenience has the burden to proffer, by affidavit or otherwise, sufficient details respecting the witnesses and their potential testimony to enable a court to assess the materiality of evidence and the degree of inconvenience."  Eaton, 2011 WL 1898238, at *3 (quoting Rinks v. Hocking, 1:10-CV-1102, 2011 WL 691242, at *3 (W.D. Mich. Feb. 16, 2011)) (internal quotation marks omitted).  It is the "materiality and importance of the testimony of prospective witnesses, and not merely the number of witnesses," that is crucial to this inquiry.  Rinks, 2011 WL 691242, at *3.

Twitter argues that witness convenience favors transfer to the Northern District of California.  (ECF No. 30-1 at 9-11; ECF No. 36 at 5-7.)  To support this contention, Twitter asserts that all of the witnesses on which it intends to rely are located in the transferee district.  These witnesses include employees with knowledge regarding its engineering operations and employees with knowledge of its sales, finance, and

marketing operations.  (ECF No. 30-1 at 4-5 (citing Axelsen
Decl., ECF No. 30-3, ¶¶ 6, 11).)  Additionally, Twitter asserts
that "numerous important third-party prior art witnesses and
sources of prior art information have already been identified in
the Northern District of California."  (Id. at 5.)

In response, B.E. argues that transfer to the Northern
District of California would be equally inconvenient to B.E.'s
witnesses, "none of whom are located in the Northern District of
California."  (ECF No. 33 at 8.)  B.E. identifies Hoyle, the
named-inventor of the patent-in-suit and founder and CEO of
B.E., as its key witness who is located in the Western District
of Tennessee.  (Id. at 6.)

Because the convenience of party and non-party witnesses is
given different weight, the Court will analyze the witnesses
separately.  See Azarm v. $1.00 Stores Servs., Inc., No. 3:08-
1220, 2009 WL 1588668, at *4 (M.D. Tenn. June 5, 2009) ("[T]he
convenience of potential non-party witnesses, who are not
subject to the control of the parties, is a particularly weighty
consideration, because it is generally presumed that party
witnesses will appear voluntarily in either jurisdiction, but
non-party witnesses, with no vested stake in the litigation, may
not.").

### 1. Party Witnesses

Twitter asserts that its "[e]ngineers who may have knowledge regarding advertising features on Twitter's website work in the San Francisco[, California] headquarters." (Axelsen Decl., ECF No. 30-3, ¶ 6.) Twitter also asserts that its employees with knowledge of its "U.S. sales, finance, and marketing operations" are located in San Francisco, California. (Id.) In short, Twitter argues that it "has established that all of its witnesses reside in the Northern District of California." (ECF No. 36 at 6.) In its Reply, Twitter defends its general identification of potential employee-witnesses by stating that identifying its witnesses with more specificity at this early stage would be "premature and prejudicial." (Id.)

Twitter indicates that the engineers that are likely witnesses are "important to Twitter's business and their absence for significant periods of time would adversely affect operations." (ECF No. 30-1 at 10.) Twitter does not, however, provide any evidence showing that these potential employee-witnesses will be unwilling to testify in this district if asked to do so. See Esperson, 2010 WL 4362794, at *8. Moreover, courts have noted that "normally a corporation is able to make its employees available to testify when needed." Clark v. Dollar Gen. Corp., No. 3-00-0729, 2001 U.S. Dist. LEXIS 25975, at *9 (M.D. Tenn. Mar. 6, 2001); see also Zimmer Enters. v.

_Atlandia Imps., Inc._, 478 F. Supp. 2d 983, 991 (S.D. Ohio Mar. 14, 2007) (finding that the convenience of witnesses who are employees "will not ordinarily be considered, or at least, that the convenience of such employees will not generally be given the same consideration as is given to other witnesses"). Accordingly, it appears that Twitter's employees will be able to attend absent any evidence to the contrary.

The Court agrees that Twitter's employees related to the development and operation of the accused products and its employees related to sales, finance, and marketing are located in the Northern District of California, and that their testimony is likely material.  Twitter, however, has not indicated how many employees it would be inclined to call as potential witnesses and has not provided any indication of the necessity of those employees to its business.  Twitter stated generally that its operation would be "adversely affected" by employee absence for "significant periods of time," but the Court has no indication as to what constitutes either "adverse" effects or a "significant period of time."  As a result, the Court cannot assess the degree to which Twitter's business would be disrupted compared to the disruption B.E. will endure due to its CEO's absence should the case be transferred.  Accordingly, the Court finds transfer would only shift the inconvenience to B.E.  See McFadgon, 2005 WL 3879037, at *2.

12

Despite showing the materiality of the testimony of its proposed employee-witnesses, Twitter does not satisfy its burden.  Twitter argues that due to the distance between Memphis and the Northern District of California, approximately 1700 miles, travel to Memphis would be inconvenient and disruptive. (ECF No. 30-1 at 9-10.)  Yet, the same is true for B.E.'s witnesses, who B.E. asserts do not reside in the transferee district.  (ECF No. 33 at 8.)  Therefore, because § 1404(a) provides for transfer "to a more convenient forum, not to a forum likely to prove equally convenient or inconvenient," distance of travel for employee witnesses does not weigh in favor of transfer.  Hunter Fan, 2006 WL 1627746, at *2 (citing Van Dusen v. Barrack, 376 U.S. 612, 645-46 (1964)).

Twitter further argues that because it intends to call multiple employee-witnesses with testimony central to the claims at issue and because B.E. likely has only one witness, Hoyle, this factor weighs in favor of transfer. (ECF No. 30-1 at 10-11.)  Twitter states, "the disruption to the large number of employees from Twitter . . . who may be forced to leave their homes and jobs to testify in Tennessee is not offset by any corresponding inconvenience to require the single inventor, who has an interest in this litigation, to travel to California." (Id. at 10.)  While B.E. did not specifically identify any witnesses beyond Hoyle, B.E. does not have the burden to do so.

Despite B.E. not identifying any individuals beyond Hoyle, Twitter's general identification of its employees as material witnesses does not satisfy its burden on this factor.  A simple numerical advantage is insufficient on the issues raised by a motion to transfer.  As a result, the witness-convenience factor does not weigh in favor of transfer.

Moreover, B.E. argues that "[i]t is likely that Twitter's California-based employees will be deposed in California where B.E.'s lead counsel is based."  (ECF No. 46 at 12.)  This further indicates that the witness-convenience factor does not weigh in favor of transfer.  See Hunter Fan, 2006 WL 1627746, at *2 (finding relevant that the plaintiff planned to take depositions of the defendant's witnesses in California in determining that the witness convenience factor did not favor transfer).

### 2.   Non-Party Witnesses

While convenience to party witnesses is an important consideration, "it is the convenience of non-party witnesses, rather than employee witnesses . . . that is the more important factor and is accorded greater weight."  Steelcase Inc. v. Smart Techs., 336 F. Supp. 2d 714, 721 (W.D. Mich. Mar. 5, 2004) (citation omitted) (internal quotation marks omitted).

Twitter asserts that, at the time of the filing of its Motion, it had identified "at least twelve prior art patents

14

with clear ties to companies or inventors in the Northern District of California." (ECF No. 30-1 at 12.) Twitter states that in order to "prepare its defenses," it "will need to gather documents and obtain testimony from these individuals and companies in California." (Id.) Twitter further contends that if the case remains in the transferor district, it would "be forced to present critical prior art testimony trough deposition transcript instead of live testimony – which will severely undercut its ability to put on an effective defense at trial." (Id.; see also ECF No. 36 at 8.) Twitter finally asserts that it would be unable to secure the attendance of these potential prior-art witnesses by subpoena if the case remains in the transferor district and that it is "highly doubtful" that these witnesses would be "willing to voluntarily travel across the country to testify at trial in Tennessee." (ECF No. 36 at 8.)

B.E. argues that the convenience of non-party witnesses is not entitled to great weight in the instant case because Twitter has not established that the "third party testimony will be material or important." (ECF No. 33 at 11.) B.E. asserts that Twitter has not stated the "relevance, materiality, and importance" of the non-party witnesses' testimony. (Id. at 12.) B.E. further argues that prior-art testimony is "almost certain to be severely limited at the time of trial" and, therefore, such testimony does not weigh in favor of transfer. (Id. at

11.)  Additionally, B.E. contends that Twitter has "fail[ed] to establish the current locations of any of the inventors," therefore there is not reliable indication that these prior-art witnesses are actually located in the transferee district. (Id.)

The availability of compulsory process for unwilling witnesses is a consideration closely related to the convenience-of-witnesses factor and the costs of procuring the witness, and therefore is an important consideration for the Court.  See, e.g., In re Acer, 626 F.3d at 1255; Rinks, 2011 WL 691242, at *4.  Whether this factor should be given considerable weight depends on the materiality of the testimony to the resolution of the case.  Rinks, 2011 WL 691242, at *4.  A federal court in the Northern District of California would be able to compel the prior-art witnesses residing in that District or within the state of California to testify at trial.  See Fed. R. Civ. P. 45(b)(2); Brackett v. Hilton Hotels Corp., 619 F. Supp. 2d 810, 821 (N.D. Cal. 2008) ("The California district courts have the power to subpoena witnesses throughout the state pursuant to [Federal Rule of Civil Procedure] 45(b)(2)(C) . . . .").  In contrast, the prior-art witnesses would not be subject to the subpoena power in the Western District of Tennessee, see Fed. R. Civ. P 45(c)(3)(A)(ii), but would be available for deposition in the Northern District of California if unwilling to testify in

16

this District.  Therefore, the testimony of such witnesses
potentially would "not be live and therefore could be less
persuasive."  <u>Rinks</u>, 2011 WL 691242, at *4.

The Court finds that Twitter has met its burden to show the
nature of the prior-art witnesses' testimony, and that the
testimony is likely material to Twitter's invalidity and non-
infringement contentions.  Twitter, however, has only stated
generally that depositions of non-party witnesses would be
inadequate and live testimony from non-party witnesses required.
To the extent the non-party witnesses' testimony may be
presented by deposition, witness inconvenience would not be an
issue.  Twitter states that these prior-art witnesses will be
necessary for trial, but recognizes that "likely many more" non-
party witnesses will be necessary.  (ECF No. 30-1 at 12.)  This
general statement relating to the number of non-party witnesses,
combined with the general statement that without transfer
Twitter would be forced to present "critical prior art testimony
through deposition transcript instead of live testimony" which
would "severely undercut its ability to put on an effective
defense at trial," is not sufficient to allow the Court to
determine (1) the number of non-party witnesses Twitter
requires;  and (2) whether live testimony of these non-party
witnesses is necessary.  Further, Twitter is only able to
estimate that it is "highly doubtful" that any of the non-party

witnesses would be unwilling to testify in this District if asked to do so.  As a result, this factor weighs only slightly in favor of transfer.

**B.  Convenience of the Parties**

Twitter argues that the convenience of the parties requires the Court transfer this action to the Northern District of California.  (ECF No. 30-1 at 1-2.)  While Twitter organizes its arguments somewhat differently than the Court, the Court finds the considerations relevant to the convenience-of-the-parties factor are the location of the sources of proof and the parties' financial hardships due to litigation in the chosen forum.

**1.  Location of Sources of Proof**

Twitter argues that all of its "relevant documents," are located in either the transferee district.  (ECF No. 30-1 at 8.) Twitter states that its "[t]echnical documentation related to the accused advertising-related technology is stored in the Northern District of California or easily accessible from Twitter's San Francisco headquarters."  (Id. (citing Axelson Decl., ECF No. 30-3, ¶ 10).)  Twitter further contends that B.E. has only produced 222 documents in its initial disclosures relating to the conception and reduction to practice of the '314 Patent, and that "the size of this production belies B.E.'s claim of inconvenience, considering that the bulk of discovery in this case and a significantly greater number of documents are

located in California at Twitter's offices." (ECF No. 36 at 4.) Further, Twitter notes that these documents have already been produced, thus there is no ongoing inconvenience to B.E. relating to the sources of proof. (<u>Id.</u>)

B.E. argues that, because its CEO resides in the Western District of Tennessee, its corporate documents and records, "including documents demonstrating the conception and reduction to practice of [the patent-in-suit]," are located in the Western District. (ECF No. 33 at 6, 12-14.) B.E. notes that while Twitter's sources of proof are located in the Northern District of California, B.E.'s own sources of proof are located in Tennessee and have been maintained there for years. (<u>Id.</u> at 12-13.) B.E. also contends that "the location of relevant documentary evidence is increasingly less important in deciding motions to transfer," and that because documents can be exchanged electronically the weight given this factor should be minimal. (<u>Id.</u> at 13.) B.E. finally argues that this factor does not weigh in favor of transfer because "it can be expected that Twitter will eventually produce its documents to B.E.'s lead counsel in California, not to B.E. in Tennessee." (<u>Id.</u> at 14.)

As an initial matter, the Court disagrees with B.E.'s contention that advances in electronic document transfer reduce the importance of the location-of-sources-of-proof factor. This

notion has been expressly rejected by the Federal Circuit.  See,
e.g., In re Link_A_Media Devices Corp., 662 F.3d 1221, 1224
(Fed. Cir. 2011) (reversing a district court that did not
consider the factor, stating, "While advances in technology may
alter the weight given to these factors, it is improper to
ignore them entirely"); In re Genentech, Inc., 566 F.3d 1338,
1345-46 (Fed. Cir. 2009) (finding clear error where a district
court "minimized the inconvenience of requiring the petitioners
to transport their documents by noting that '[t]he notion that
the physical location of some relevant documents should play a
substantial role in the venue analysis is somewhat antiquated in
the era of electronic storage and transmission'" (quoting
Sanofi-Aentis Deutschland GmbH v. Genentech, Inc., 607 F. Supp.
2d 769, 777 (E.D. Tex. 2009))).

        The Court agrees that it is likely that the sheer volume of
documents Twitter has in its possession outnumbers the patent-
related documents in B.E.'s possession, and that B.E. has
already produced documents related to the conception and
reduction to practice of the '314 Patent, but the Court
disagrees that this is enough to tip the balance in favor of
transfer.  The Court finds that both parties maintain documents
in their respective districts; that these documents will be
integral to the proceedings; and that Twitter will be expected
to serve its documents on B.E.'s counsel in Northern California,

20

not in the Western District of Tennessee.  Twitter's reliance on
L&P Property Management Co. v. JTMD, LLC, No. 06-13311, 2007 WL
295027 (E.D. Mich. Jan. 29, 2007), is misplaced.  (See ECF No.
30-1 at 9.)  In L&P Property Management, the court found that
transfer was appropriate as all of the movant's relevant
documents were located in the transferee district and there were
no relevant documents in the transferor district.  See L&P Prop.
Mgmt. Co., 2007 WL 295027, at *4.  In the instant case, Twitter
indicated that its relevant documents are located in the
transferee district, and B.E. has shown that its relevant
documents are located in the transferor district.  Further, B.E.
stated that the documents in the transferor district
"include[ed] those relating to the conception and reduction to
practice" of the patent-in-suit (Hoyle Decl., ECF No. 33-1,
¶ 7), but did not indicate that these were the only documents in
the transferor district.  Taken together, the aforementioned
facts indicate that as to the location of the sources of proof,
the Northern District of California may only be a somewhat more
convenient venue for the parties to the instant case.  This
factor, however, is not sufficient, by itself, to require
transfer.

> **2.    Financial Hardships Attendant to Litigating in
>         the Chosen Forum**

Twitter argues that its employee-witnesses with relevant knowledge to the instant case are all located in the Northern District of California.  (ECF No. 30-1 at 9.)  As a result, Twitter contends that travel to Tennessee would impose a significant inconvenience to its witnesses in terms of cost and the disruption to the witnesses' lives.  (Id. at 9-11.)  Additionally, Twitter argues that the absence of its employee-witnesses from its headquarters in the transferee district would "adversely affect operations."  (Id. at 10.)

B.E. states that it "would face a financial burden by having to litigate in the Northern District of California." (ECF No. 33 at 14.)  B.E.'s CEO Hoyle states that "B.E. will incur expenses it will not incur if the case remains in Memphis."  (Hoyle Decl., ECF No. 33-1, ¶ 9.)  B.E. also states that "[i]t is reasonable to require companies with the wealth and size of Twitter to litigate in jurisdictions in which they regularly conduct business."  (ECF No. 33 at 8.)  Further, B.E. notes that "Twitter does not contend that it is financially incapable of bearing the expense of litigating in the Western District of Tennessee."  (Id. at 14.)

The Court has considered "the relative ability of litigants to bear expenses in any particular forum" among the factors in a § 1404(a) case.  Ellipsis, Inc. v. Colorworks, Inc., 329 F. Supp. 2d 962, 970 (W.D. Tenn. 2004).  In the instant case,

22

B.E.'s CEO stated that the company will incur additional expenses, but it has not shown with any specificity how detrimental those expenses would be to the company.  Further, while Hoyle stated that his personal financial status would be adversely affected by litigating in the Northern District of California, he did not state why or how his personal finances would impact B.E., the party to the instant case.  (See Hoyle Decl., ECF No. 33-1, ¶ 9.)  B.E. has shown that Twitter has the ability to bear expenses in this forum (see ECF No. 33 at 8; ECF No. 33-3), but the Court does not find this to be a dispositive factor in denying Twitter's Motion.  But see Siteworks Solutions, LLC v. Oracle Corp., No. 08-2130-A/P, 2008 WL 4415075, at *4 (W.D. Tenn. Sept. 22, 2008) (finding the relative financial strengths of the parties did not weigh in favor of transferring the case, as the party opposed to transfer showed it "ha[d] no net worth, very little revenue, no gross profits, no assets, and [would have to] borrow from its owners in order to pay the litigation expenses").  The Court finds that the evidence presented is insufficient to make a showing that B.E. or Twitter will be adversely affected by litigating in either forum.  The paramount consideration remains whether the Northern District of California is more convenient to the parties than B.E.'s chosen forum.

With respect to convenience, the Court finds this factor does not weigh in favor of transfer. While Twitter has made a showing that its business would be disrupted by the absence of its proposed witnesses, B.E. has made an equal showing that its business would be disrupted in having to prosecute the instant case in California. Twitter has shown that the Northern District of California would be a more convenient forum for it, but it has not shown that the Northern District of California is a more convenient forum for both parties. As a result, the hardship to Twitter does not indicate transfer is more convenient.

### C.   Interests of Justice

Twitter argues that transfer to the Northern District of California is appropriate based on additional considerations that pertain to the interests-of-justice factor. (ECF No. 30-1 at 14-16; ECF No. 36 at 9-10.) These considerations include the "public-interest concerns, such as systemic integrity and fairness," of the proceedings. See Moore, 446 F.3d at 647 n.1. In the instant case, the Court will consider the relative trial efficiency of the transferee and transferor districts and the localized interest in the litigation.

### 1.   Trial Efficiency

Twitter argues that while the Western District of Tennessee has a shorter median time from filing to trial, "the median time

24

[from filing] to final disposition of a case in the Western District of Tennessee is longer than in the Northern District of California." (ECF No. 36 at 9.)  Twitter concedes, however, that in general this factor is neutral. (Id.)

B.E. argues that transfer to the Northern District of California "would likely delay trial of this case by at least one year." (ECF No. 33 at 15.)  B.E. cites 2012 federal court statistics for both districts to illustrate that the median time from filing to trial in the Northern District of California was 32.7 months, while the median time from filing to trial in the Western District of Tennessee was 18.8 months. (Id. (citing ECF No. 33-4).)

Reviewing the statistics and the parties' arguments, the Court finds this factor neutral to its determination of whether the Northern District of California is the more convenient forum.

### 2.   Local Interest

Twitter argues that the Northern District of California has strong local ties to the instant case because Twitter produces the allegedly infringing products there, its employees are located there, and the sources of proof are located there. (ECF No. 30-1 at 15.)  Twitter also asserts that B.E.'s ties to the Western District of Tennessee should be discounted because it manufactured those ties in anticipation of litigation. (Id. at

15-16.)  Twitter also argues that the Northern District of California has a "strong local interest in adjudicating claims calling into question the activities of companies and employees who, like Twitter and its employees, reside in the District." (Id. at 15 (citing In re Hoffman-LaRoche, Inc., 587 F.3d 1333, 1336 (Fed. Cir. 2009)).)

B.E. argues that the Western District of Tennessee has a substantial local interest in the instant case because the holder of the patent-in-suit is located in this District and because Twitter has allegedly infringed the patent in this District.  (ECF No. 33 at 16.)  B.E. also asserts that its ties to Tennessee are not "recent, ephemeral, or manufactured for the purposes of litigation."  (Id.)  Hoyle stated that he has resided in the Western District of Tennessee since 2006, that Memphis is B.E's principal place of business, and that the sources of proof pertinent to the instant case are located in the District.  (Hoyle Decl., ECF No. 33-1, ¶¶ 2-4, 7-8.)

The Court finds that this factor does not weigh in favor of transfer.  While Twitter has local ties to the Northern District of California, the Court finds that B.E. has local ties to the Western District of Tennessee.  Further, the Court finds that B.E.'s connection to the Western District of Tennessee was not manufactured for the purposes of litigation.  B.E.'s founder and CEO, who is also the holder of the patent-in-suit, has resided

26

in the District for seven years.  B.E.'s connections, therefore, are neither "recent" nor "ephemeral."  As a result, Twitter has not demonstrated that the Northern District of California's local interest outweighs that of the Western District of Tennessee.

**IV.   CONCLUSION**

For the foregoing reasons, the Court finds that, in balancing the statutory factors, Twitter has not demonstrated that the Northern District of California is a more convenient forum than the Western District of Tennessee.  Therefore, Twitter's Motion to Transfer Venue is DENIED.

Accordingly, the Court hereby LIFTS the February 11, 2013, stay of all proceedings.  (ECF No. 32.)  Regarding Plaintiff's Motion to Dismiss and Motion to Strike, filed January 25, 2013 (ECF No. 29), Defendant shall have fourteen (14) days from the date of entry of this Order, up to and including August 2, 2013, to file its Response.

**IT IS SO ORDERED** this 19th day of July, 2013.

/s/ Jon P. McCalla_____
CHIEF U.S. DISTRICT JUDGE